## Sell v. Bechtelsville Community Rod & Gun Club

C.P. of Berks County, no. 6011 Equity 1990.

*Lawrence Sager,* for plaintiffs.
*John A. Fielding III,* for defendant.

STALLONE, *J.,* June 22, 2000—This is an equity action involving a claim for private nuisance arising out of the ownership and operation of a shooting range by the defendant, the Bechtelsville Community Rod & Gun Club. The plaintiffs, Curtis H. Sell and Shirley M. Sell, live in a single family residence located immediately adjacent to the shooting range.

On April 30, 1993, which was the date scheduled for a non-jury trial on the merits of the Sells' private nuisance claim, but before the trial actually began, the parties informed this court that they had reached a settlement. At that time, they orally placed the terms of their settlement on the record and thereafter memorialized it in the form of a written "consent decree" which was signed by counsel for the parties and made an order of court on June 7, 1993. The consent decree reads as follows:

"And now, June 7, 1993, with the plaintiffs, Curtis H. and Shirley M. Sell and defendant, Bechtelsville Community Rod & Gun Club having reached agreement on a resolution of this matter the court enters the following consent decree.

"(1) Club shall use the rifle and pistol range for target shooting only on the following schedule:

"(A) From 10 a.m. to 7 p.m. each day of the year except Sundays;

"(B) Sundays from 12 noon to 6 p.m.;

"(C) On request of club, Sells may consent in writing to expand the hours to accommodate special circumstances such as shoots or competitions to be held on the rifle pistol range.

"(2) On not more than [sic] two Sundays per calendar year during the months of July and August, the range may be closed at Sells' request to accommodate outdoor picnics or family gatherings on Sells' property. Sells must provide at least 45 days written notice to the club president of the Sundays they wish to close the range.

"(3) Sells acknowledge and the court so orders that use of the rifle and pistol range during the schedule set forth above is not and shall not be deemed a violation of the existing zoning ordinance or a nuisance, public or private. Sells shall not make any claim, take any action, or support any action by anyone else, inconsistent with this paragraph.

"(4) *Sells shall purchase and deliver that [sic] their sole cost and expense a row of trees to be planted on the club property in the area between the shooting pavilion and the Sells' existing home. The trees will be of such size that the club shall be able to plant them without special tools and/or equipment. Sells shall also purchase and deliver at their sole cost and expense acoustic material to be installed in the roof of the shooting pavilion.*[1]

"(5) The club shall plant the trees purchased by Sells and shall install the acoustic materials purchased by Sells in the shooting pavilion. The installation of the acoustic material shall not require any structural additions or alterations of any kind, shall not require special equipment nor shall it impair or limit the use of the shooting pavilion as the same has been used heretofore.

"(6) The club shall take reasonable steps to preserve and maintain the trees and the acoustic material.

---

1. All italicized language appearing in this opinion is for emphasis only.

"However, should any of the trees be damaged, destroyed or die, or should the acoustic material be damaged, club's sole responsibility shall be to replant any replacement trees or reinstall the acoustic materials after the same have been purchased by Sells at Sells' sole cost and expense.

"(7) Should any club member violate the shooting times set forth in this order, Sells shall report said violation to the officers of the club and provide such identification of the violator as Sells can obtain (for instance license plate numbers, names, etc.) and shall report the same to officers of the club. Upon proof of the violation, club shall terminate the membership of the offending member which membership shall not be renewed. Club shall not be deemed in contempt of this court order with regard to violating shooting times unless and until club has been provided with sufficient proof from Sells and after proof of the violation has failed to discharge the offending member and/or members.

"(8) Club activities, other then [sic] use of rifle and pistol range for target shooting, shall not be affected or limited by this order.

"By The Court:

"/s/Stallone

"Albert A. Stallone, Judge"

Four years later, on August 11, 1999, the gun club filed a petition to hold the Sells in contempt of court or, alternatively, vacate this court's order of June 7, 1993, as a result of their alleged failure to comply with paragraph 4 of the consent decree and also to award counsel fees to the gun club for the costs which it incurred in initiating this contempt proceeding. The Sells thereafter responded to the gun club's petition by filing a cross-

claim for counsel fees,[2] under section 2503(a) of the Judicial Code[3] for what they alleged was obdurate, vexatious and/or bad faith conduct by the gun club in filing the contempt petition.

Thereafter, this court held two days of evidentiary hearings on the gun club's petition and on both parties' claims for counsel fees. During the second day of the hearing, this court learned for the first time that the Sells had now complied with paragraph 4 of the consent decree by having delivered the required trees and acoustic material to the gun club six days prior to that second hearing date, which rendered the underlying claim in the gun club's petition as moot and thereby left us with the need to adjudicate only the parties' respective claims for counsel fees against each other. This opinion is in disposition of those respective claims.

Under Pennsylvania law, a trial court possesses the inherent power to enforce its own orders and decrees by imposing economic sanctions upon a party for his or her failure to comply with them. *Brocker v. Brocker,* 429 Pa. 513, 519, 241 A.2d 336, 338 (1968); *Jack Rees Nursing & Rehabilitation Services v. Hersperger,* 410 Pa. Super. 409, 600 A.2d 207 (1991). However, in order for it to find a party to be in civil contempt of court, the trial court must find that the complaining party is "aggrieved." *Jack Rees Nursing, supra* at 414, 600 A.2d at 209 (quoting, inter alia, *Brocker v. Brocker, supra*). And, in order for a party to be "aggrieved," that person must be adversely and substantially affected by a violation of a pro-

---

2. The Sells asserted this cross-claim in the new matter which they filed together with an answer to the gun club's petition.

3. Title 42, 42 Pa.C.S. §2503(a) (Supp. 2000).

vision in a court order or decree. *William Penn Parking Garage Inc. v. City of Pittsburgh,* 464 Pa. 168, 346 A.2d 269 (1975); *ACS Enterprises Inc. v. Norristown Borough Zoning Hearing Board,* 659 A.2d 651 (Pa. Commw. 1995).

Although we certainly recognize that the Sells did not deliver the trees and acoustic material until six days before the second hearing date, the fact remains that there is no evidence in the record which shows that the gun club was affected in any adverse or substantial way by the Sells' failure to comply with this paragraph prior to that date and that, therefore, it was "aggrieved" by their noncompliance. Accordingly, we must deny the gun club's claim for counsel fees.

Now, as to the Sells' claim for counsel fees under section 2503(9) of the Judicial Code. Our review of the record leaves us with no doubt that the gun club filed its petition not only in an effort to compel the Sells to comply with paragraph 4 of the consent decree, but also to extract some concessions from them in the form of additional shooting hours for its members beyond those set forth in the consent decree of June 7, 1993. The use of our judicial system to extract something to which a party is not otherwise entitled is exactly the type of conduct which section 2503(9) of the Judicial Code was enacted by the Pennsylvania State Legislature to deal with. If this were an action at law instead of equity, this court would have no hesitancy in granting counsel fees to the Sells.

However, since this is a matter in equity, we believe that the Sells should bear some of the responsibility for the commencement of this contempt proceeding which was due, in part, to their failure to comply with all of the

426

terms and conditions of what they had previously agreed to. Therefore, we decline to award any counsel fees to them as well.

Accordingly, we enter the following attached order.

### ORDER

And now, June 22, 2000, it is hereby ordered that:

(1) The defendant's petition to hold plaintiffs in contempt or, alternatively, vacate this court's consent decree of June 7, 1993, is denied;

(2) The plaintiffs' request for counsel fees under title 42, 42 Pa.C.S. §2503(9) (Supp. 2000), is denied; and

(3) The defendant's request for counsel fees as contained in its petition is denied.